Thank you, Your Honors. Good morning. I'm Lex Coleman. I represent Brian Terry. He's a 33-year-old African-American father of three children, who's been in jail to prison since April 20, 2016. We're asking the court today to reverse the district court's denial of his suppression motion, vacate his judgment and sentence, and remand it for further proceedings, excluding the methamphetamine seized during the traffic stop at issue in the case. My arguments this morning, while I know there are three in the briefings, are really going to focus on the first issue. If Your Honors reverse that, there's no need to rule on the other two. This case is about what constitutes a possessory interest in a car that gives rise to a Fourth Amendment protections, its scope, as it would relate to Mr. Terry, and some really flagrant police misconduct during the placement of GPS devices. Mr. Terry is the only party before the court on this appeal, and we're acknowledging the district court's factual findings is correct. We believe the district court was correct in rejecting a categorical attenuation rule, and in finding the officer's conduct in this case was flagrant, such that the meth should be suppressed. Where the district court got it wrong was in its standing analysis. Mr. Government has conceded. Which they've conceded, exactly. And in our briefing, that part of the appeal should be determinative, and remanding the case for further proceedings based on reversing that ruling, that he had the standing. And again, what's established as a law of the case at this point is that there was a flagrant violation of Fourth Amendment interests. Mr. Government also acknowledged that the Fourth Amendment rights had been violated in the pretrial motions hearing. That's in the joint appendix at 77 and 80, in the unsealed portion. Well, this is an unusual case because of a concession, but let's assume that we don't accept that concession. When do you think the Fourth Amendment violation occurred? When the GPS tracker was placed on that car while my client was possessing and operating it. So, as I understand the government's argument, and I guess they can speak for themselves, they seem to suggest that there was a Fourth Amendment violation that occurred when he was personally seized and searched when the car was stopped. I guess it doesn't matter from your perspective. Actually, it does because it continued throughout. This was a continuous violation. It started on April 18th and it continued until the car was seized on April 20th. If you look at, in the joint appendix, page 182, is an image of the screen the officer had in the car using the GPS to verify the speed of that car to stop it. Yes, but I thought the evidence at the hearing for the district court was that they tracked it. They did. Independently. They got there because they know to go to that area because of this illegal device they put in. Absolutely. So, they had their own device that they were tracking it, separate and apart from the device they put underneath the car, correct? No, ma'am. What they started with, they placed a tracker. Right. And go to the house. I've used track incorrectly. No, no. They also did what they call a ping warrant. Yes. Similar to what they were using in Carpenter, which was they simply wrote a letter to the cell phone carrier and said start transmitting the data over the Internet to me of the location information for that phone. They call it a ping warrant. And it's not a warrant. The judge didn't even have to approve it. That had stopped. That's why this infraction is not interrupted by anything. It was put on the car. It was continuously monitored where it went. There were duplicate means to do it, but they all failed and it stopped to operate for several hours on the 20th. Was this the, you've got me on the dates, is this the time in which he was arrested? I thought that they saw him, that they had independent evidence that he was speeding a little, to be sure, and that they buoyed it up with their illegally gotten evidence. Am I correct in understanding that? That's how they tried to characterize it. They used something called pacing, which was not a device and an opposite follower. I just said tracking, but pacing. Yes. And we have said, we, the Fourth Circuit, have said pacing is a legitimate way to gauge speed. It can be, but in Soward you acknowledge that it needs some additional confirmation to back it up if all it is is viewing. I mean, the pacing in this case was driving behind the car for a period of time. Right. And deciding, oh, I've got it now where it's going five miles an hour over. And to explain where this happened, it's kind of a speed trap. It's at the county line between Putnam and Kanawha County, and it drops from 50 to 45. I thought that the testimony helpful to you was the officer saying, well, I don't know that we would have been there, but for this device that we put underneath the car. Absolutely. So speed trap or not, they're not patrolling it. No, they staged a full interdiction operation based on the GPS data. State Highway 35 is what comes from Ohio into West Virginia for about 35 miles before it gets to where the stop happened at the county line. And, no, these officers were local Kanawha County officers. And they were just over the line in Putnam County, adjacent county, where they staged the operation to get behind and follow the car. So, yes, I'm looking at my time. And I'm glad you're with me on the concession by the United States. The United States is with you. Yes, on the steering. And that's kind of been the case throughout was, well, we want to get past all the stuff that they did wrong. Five miles an hour over here is what makes it okay, all okay. There's been a lot of talk about Sprinkle in the argument of this case and the briefing of the parties. And I want to suggest if that case, if you're buying any or weighing any of the arguments of the United States, you look very carefully at Judge Michael's footnote five. Where he commented on the government was also arguing, hey, fleeing is an intervening act, which was what was happening in the Sprinkle case. And Judge Kruger said, oh, no, the pulling the gun and shooting back at the officer, that overpowers that to even be discussed. That observation by Judge Michael at the time has suggested what we were arguing before Judge Goodwin all along is that there's a degree of infraction that works into the brown. And now we've seen the Streiff attenuation analysis. That it's not just, oh, anything under any circumstance. If it's that flagrant a violation, it's going to take a pretty good intervening thing in between. Otherwise. What if the law had been unsettled at the time? If we didn't have Jones, what would be the result in this case? Oh, I'd still be arguing that it should be the result of one. I know you would be. It's a closer case, right? You know, Judge Brandeis recognized all the way back in Olmstead in 1928 that the role of the courts has got to be to protect against the progress of science and diminishing Fourth Amendment protections. He expanded on that, not science necessarily, but what the right to privacy means as far back as 1890. Aren't we going to have to distinguish a pre-Jones case? That's all very well and good, right? No, ma'am, I don't think we do. But it was just wrong, our prior case, or the prior case? I thought that that was one of the things that was troubling Judge Goodwin here. He looked at Richard, but Richard was distinguishable as well. There wasn't the flagrancy we had here. I mean, keep in mind what distinguishes us when you look at the three-prong analysis from Brown. So because of the flagrancy, you think that even pre-Jones. Yes, ma'am. But it's the flagrancy that makes it different. Yes, ma'am. And the fact the flagrancy extended for 48 hours. It was a continuous flagrant violation. It wasn't just here. It happened on Tuesday, and nothing else happened until two days later. It continued. This tracker was attached and being used continuously. And even Judge Roberts recently in Carpenter has observed. You know, Jones was based on trespassory property rights. You know, did we trespass on a chattel? Judge Roberts in Carpenter has gone so far now to say that, you know, with everything that's on cell phone data, this was, you know, cell site location information, which is not as detailed as GPS, that we've got a reasonable expectation of privacy with that, regardless of the property interest. It kind of harmonized and went to the back part of Jones, which would have been the connection with pre-CATS, pre-RACAS. It's not just tied to property rights. What is the reasonable expectation of privacy? We saw that in Byrd, where the guy had the rental car and went on the application or anything there. And they distinguished saying, you know, the fact you couldn't get insurance or it wouldn't be covered if you had a wreck, doesn't mean you didn't have a reasonable expectation of privacy. And they remanded that case to see if what he did was actually trick the person who rented the car to see if he fell in somebody who stole it versus somebody who was legitimately in it. And I'm sorry, I don't mean to get afield of our case, but what... Can we go back to our case for just a minute? Please. So going back to the intervening circumstances. Yes, ma'am. And your position, we read this record in the best light for the government. Yes, ma'am. Okay. And so our question is, with respect to the intervening circumstances, whether there was probable cause without the confirmation. And it's your position that there wasn't? Because they wouldn't have been there to develop it. Yeah, no, they wouldn't have been there for sure. But let's leave that aside for a moment. That is, I think, a very good fact for you. But they are there. And I thought that you had said in response to an earlier question that you thought that the tracker made them confirmed the speed that they had on the pacer. That's how it was used. Well, I understand that, but still we have circuit law, I think, that says that pacers are sufficient to tell us the speed. So what I'm trying to do is to see just how much this intervening circumstance was separate or not. And you pointed out reasons why we could hold it's not separate. But if we look at this in the best light for the government, I think that there well may have been enough evidence for a stop. Well, I can respond to that a couple of ways. Excellent. I think SOWARD is very instructive with that. First, in that circuit precedent, it talks about the limitations of pacing and when it will and will not provide sufficient probable cause. Well, in SOWARD we said visual estimate was sufficient to justify a stop for speeding. Well, I thought I read it that a little more than that, verified with radar, verified with GPS tracking, verified with something. Pacing. Well. Okay. That's where, again, I believe that the taint of this carries over enough that that's not a justifiable basis to ignore the constitutional violation and allow the evidence in. I don't want this case to be, which Judge Gregory noted nine years ago in Griffin and his dissent, that this is going to be another case that's allowing the Fourth Amendment to die a death of a thousand cuts. All Fourth Amendment analysis, if we're taking the whole totality of the circumstances together, is a balancing exercise in every individual case. And the flagrancy of the conduct here, not just placing a tracker without a warrant, lying to a magistrate about what happened leading up to get a warrant. And this is after previously getting two warrants, not serving them, then waiting to serve them after they flipped and searched a car. Is that in the record? Yes, ma'am. That's the history of it we developed during the pre-trial motion hearing and the transcript. I read the transcript of the pre-trial. I didn't remember that. So they searched him, searched the car, searched his house, and none of the informant information they had that allowed them to get the first search warrant was borne out at all. The trash pulls. They found one corner bag that field tested positive for heroin. That's it. No heroin in it, just a little brown residue. That apparently got them a warrant that they chose not to execute. They did a second trash pull, found tobacco shavings and not even a roach this time, went back, were able to get a second warrant. That was brought when they put the GPS tracker on the car. They told him they had a warrant. He consented and went back. They searched the whole place, found nothing. Then they go get the warrant for the GPS unit and tell the judge nothing about any of those facts or that it's placed and admitted during the pre-trial motion hearing that, yeah, when we don't have time to go get a warrant, essentially we slap one on the car and that's okay. What evidence was produced at the suppression hearing, which I understand you were under some pressure to do it quickly, about this being a practice of the police? We had one report in from a case I had also handled where they gave the excuse for not going to get a warrant. And then D.C. Johnson, who was a corporal who testified, acknowledged that that wasn't the only case they did it in. They did it at times when we were surprised and saw something we didn't know about before. That was a justification for routinely using a GPS tracker without a warrant. We only had in, I thought, because that's what I'm asking you about, in the record, one other instance. One other actual report. I mean, there's questions about is this the, but it never quite gets nailed down. It doesn't develop as clearly as I know it occurs in our district. But he, I thought, said enough in that. But I think you have that support in the record if you want. I'm really dwindling down on time. Do either of you have any other questions? I'd be happy to. You're going to sit down? Or do you have an argument you want to give us? I'm not quite sure what you're saying. I've got ten seconds left. I think Judge Gregory would give you time to make whatever argument you want. Yeah, you have ten seconds left. But is there something you want to say? I mean, do you think to summarize? I will summarize. The standing issue is supported not just by the concession of the United States, but by Tamara Moore's affidavit that the court did not address. That's on 222 of the record. As far as the attenuation argument, again, I don't believe there's circuit precedent here preventing it. I think if you look carefully at Streiff, there's enough there in the balancing of the three factors, and particularly Mr. Terry's case, that there was sufficient flagrancy to overcome the assertion, suggestion of any intervening event here. This was not speeding resulting from reacting to the constitutional violation. This was speeding that was detected and found by the exploitation of the illegal property intrusion and exploiting the Fourth Amendment violation. And that's why this should be reversed, the amphetamine excluded, and we have further proceedings based on that. You know, when we were talking about post-Jones or pre-Jones, the case that I was thinking about was this unreported case from South Carolina, which I thought involved similar conduct by the police, similarly flagrant conduct. Richard? It involved the exploitation of the GPS device. It certainly didn't involve lying to a magistrate and going behind, trying to get a warrant, trying to legitimize something they knew was wrong. Of course, the argument could be that that's even worse. They didn't even try to get anybody to sanction it. I mean, I'm not sure. Was there a finding there that the activity was flagrant? Richard was 2009, right? It was pre-Jones. It was pre-Jones. But I'm going back to pre-Jones. So I thought that was your principal distinction between this case and Richard, that it was pre-Jones rather than post-Jones. But I thought you said in response to being no, no, no, no, that the result should have been the same there because the Fourth Amendment has always existed and because you have flagrant activity here and not there. But it struck me that it was similarly flagrant there. It is similarly, but, again, the problem with Richard and to some degree in Sprinkle is, and I don't think Judge Michael Minut in Sprinkle, but it looked like the Richard panel was applying a bright line categorical rule, and that's what I think is an inappropriate application of Brown. And I have more confidence in that since Brown is so old that Streiff said enough to the same effect. It's not black and white. Thank you. Thank you. Ms. Coleman? I'm sorry. Ms. Thomas. Hi. Thank you. Ms. Thomas. May it please the Court, I'm Assistant United States Attorney Meredith George-Thomas from the Southern District of West Virginia. The judgment of the District Court before the Honorable Judge Goodwin should be affirmed. Defendant's motion to suppress evidence and motion to dismiss the superseding indictment both were correctly denied, and the Court's application of the career offender guidelines was correct. I'll talk about that motion to suppress. That seemed to be what was focused on in the earlier argument. Can you talk about your concession first? Yes. We concede at the outset that the defendant has the standing to challenge the constitutionality of the traffic stop that occurred where the methamphetamine was found, and also that we waived it by not bringing it up earlier in the motions hearing or any of the later pleadings. So, in other words, you're saying there's no effect to you at all? You disavow what the District Court rationale. We disavow. We are moving forward under the theory, which has been the United States theory the whole time, of intervening circumstances in relationship to the stop where the defendant was found with methamphetamine. All right. That traffic stop was proper. The vehicle was speeding. It was determined by pacing by law enforcement. But it was backed up with reference to this illegal device, correct? It is true that they knew where the vehicle was because of the GPS. That is just like Richard. I thought the testimony also was. Correct me. Did you handle this case below? I did not, but I'm familiar with the record. That is a good answer. Lawyers who tell me they didn't handle it below and therefore they don't know the record do not get far with me. Hopefully. You've already made a good point here. Okay, so I thought there was testimony that they did also check their information with the reference to the illegal device. That is correct. They double-checked it, but they paced it first. And after they paced it, it would be our position that they had probable cause to stop that vehicle at that time. Okay, so what you have to do is to go through the strife factors, right? Yes. Okay. And that's your position on one of the strife factors? Yes, that is the intervening circumstance. Now, when you line this case up to strife, do you think you can say that they are totally unrelated, looking at the exact language you used? They are totally unrelated insofar as there was an independent reason to stop that car. The government acknowledges that those law enforcement officers wouldn't have been looking for that car without the GPS monitor, but they were within their rights once they observed that stop to stop the car. And that's what happened in Richard. They observed an illegal lane change, and they stopped the car. The search itself in Richard is very similar. They were tracking the vehicle with the GPS device. They tracked it, I believe, from South Carolina to New Jersey and then back, and then they stopped the car. Well, okay. But, of course, Judge Goodwin, and I know you disavow his ruling on standing, but he did make some other factual findings in this case, including that this was flagrant activity on behalf of the police, and that's different from Richard, isn't it? It is. Richard found that there was no flagrancy. The district court here… Why doesn't that make all the difference here? Well, we also disagree with the flagrancy finding here. The lower court… So you think that misleading a magistrate is not flagrant activity, or at least omitting important information? We would characterize that as a mistake, and I can explain that. First of all, it was before that morning where they initially saw the defendant at the Family Dollar. They had no connection to that Kia before. The law enforcement was not aware that he had any affiliation with the Kia that they ended up putting the tracker on. How does that help you? Because it creates circumstances of exigency, and the lower court fully… Well, I mean, that may be true, but the law was clear at the time, wasn't it? Exigency allows… Doesn't allow you to violate the law. I don't see how it's exigent. You could go and get a warrant, and the next day you can put it on. But exigency allows law enforcement to prevent the destruction or removal of evidence. And here, they had no reason to believe they would see this Kia. Again, they had been looking for the defendant. The testimony was, I believe, 10 days. They weren't sure where he was sleeping. I believe the law enforcement testified at the motions hearing. They didn't think they'd have a chance to find that car again. And then they went and got a warrant as soon as they could thereafter. They did go search his house first, and then they went to the magistrate and got a warrant. All that says to me is that every time the police think that there is some sort of illegal activity, they can act illegally themselves and then go get a warrant. But that's not the law. You have to go get the warrant first. We would analogize this to seizing an iPhone at a traffic stop when an officer finds drugs and putting the iPhone on airplane mode so the data doesn't get destroyed. Otherwise, any time you put a tracker on a car – let me give you an example that actually the law enforcement officer gave the court at the suppression hearing.  a target of an investigation is getting ready to rent a U-Haul or something like that. I don't remember the brand he used. And then they get there, and the target rents a different car. So the warrant that they have is no longer for that specific car, so they end up in an exigent circumstance putting the tracker on a different car, then going back and getting another warrant. Okay, and is that sanctioned? Is that allowable under the law? It would be our position it would be. It would be exigent circumstances. Well, do you have a case that supports that? I don't, Your Honor. That's unfortunate, isn't it? But it's a lot like – That explanation was unavailable with the district court. It's still found flagrantly. And I think that just demonstrates that your client does this as a matter of practice. I mean, it supports the defendant's argument here that when it's not convenient for them to get a warrant before they put the tracker on, they do it after. That violates the Fourth Amendment. I would respectfully disagree. And actually, there is a case that's sort of similar in that the Supreme Court's case of Marilyn v. Dyson, which talks about how vehicles are readily mobile. Now, I understand that is about searching vehicles and the automobile exception. But it's the same kind of principle. You're able to go – they're saving evidence. They're going to go get the warrant. They did go get the warrant here. Now, granted, it was a bare-bones warrant. It could have been – had more detail. But they still did go get the warrant. Did they reveal to the magistrate what they had done already? They did not. And it would be better fact for the United States if they had. Well, if they don't do that, I don't think you get much from the warrant. But if we could go back to Strife, which is where you have to make your case. We've talked about intervening circumstances. I think I understand your position. You don't dispute any of the facts that Judge Goodwin found with regard to flagrancy, do you? We do dispute the fact insofar that it was a pattern in practice that they do this to violate the Fourth Amendment. But that's just more than three – not even three minutes ago, you told me that they did this in other circumstances. So you were offering evidence that, in fact, it is their pattern in practice. But it's very limited circumstances. Another example that they gave would be – the Garvin report is – I believe you all mentioned it earlier. That was an example where law enforcement was unaware of the vehicle that they ended up placing the tracker on until they saw it at a controlled buy. And it was the source of the investigation's target. The investigation's target went into that car, I believe got some methamphetamine and came back out. They had never seen that car before. It had out-of-state plates. They didn't have time to go to a magistrate and get a warrant. And they, again, were concerned about the destruction and removal of evidence. Okay. Can I just go back to my question one more time? Do you dispute the facts that the district court found with respect to flagrancy? I know you dispute his conclusion that this activity, that these facts were flagrant. But do you dispute the factual findings? I want to make sure I answer your question. What evidence do you have that it's clearly erroneous if you claim that it is? The things that I have mentioned already before, that it wasn't flagrant, because they had an exigency. An exigency. Okay. But I think that's a legal argument with respect to his conclusion. Do you understand the facts he found? I thought that they were undisputed, the facts. I don't believe he addressed the facts that the officer went over in the suppression hearing. The part about where, I believe it's in JA 81 and 90, where he talks about how the law enforcement officer hadn't seen the vehicle that the defendant was driving that morning, hadn't connected it to him before. It wasn't registered to him. So they were very concerned that they would never see him in this vehicle again. They had no connection to him with this vehicle previously. Those are facts you think that he should have considered, is that right? But that isn't disputing the facts that he did rely on. I'll go down them, and you can tell me whether the government disputes them. That the police secretly placed a tracker despite knowing that a warrant was required. We would agree with the part where they did secretly place a tracker. Right. We agree that they know to get a warrant for those, but we disagree with the part where you always have to have a warrant to place a tracker. That's illegal. Fair enough. Yes, Craig. That they misled a magistrate judge. I believe it's in a footnote, but we argue that that was a mistake, not purposeful misleading. And to support that, in the officer's report, he acknowledges he didn't have a warrant when they put the tracker on. He testified about it in front of the district court openly. He acknowledged it. He wasn't trying to obfuscate that or keep it out of the factual record. That doesn't dispute the fact that they misled him at the time. The best question is that he came clean with it before the district court did. Right. We would argue that it was a mistake to leave it out of the warrant. And he utilized, the police utilized the fruit of the illegal GPS to seek out and confirm the intervening crimes occurrence. We would agree that they used the GPS. And that's how they knew where the defendant was when they made the stop. All right. Thank you very much. It's important to look at the policy considerations behind Sprinkle and Strife. And even Richard. And in Richard, they pointed that out. It favors exclusion only when misconduct is purposeful. And here we would say that is not the case here. It's not flagrant. It's not purposeful. The law enforcement thought that they would not have a chance to place that tracker again. And that's why they did that. So they did it on purpose. Well, it wasn't purposeful misconduct. Does it matter? I know Richard, our decision, which is unpublished, didn't make a distinction in terms of the severity of the criminal violation. But I thought Sprinkle was clear on that point, that you're dealing with a crime involving assaulting a police officer, shooting at a police officer. That's an intervening circumstance of some magnitude that obviously weighs much differently than a run-of-the-mill traffic violation. Sprinkle does talk about very severe crimes. That would count as an intervening circumstance. But I think Richard opens the door to smaller intervening circumstances, like a lane change, like speeding. It's important to note that the officers, when they stopped him, were in a place that they were allowed to be. Now they were there because the GPS. For a reason that they weren't allowed. But they were in an open and public place when they observed the car speed. Right, but it's not attenuated from purpose was to follow, right? Correct? Yes, the GPS was to know where they were. And to follow him while he's driving, correct? Yes. And that's exactly in the total context of the violation. They said he was speeding five miles over, right? They're in the place they wanted to be, and they were there because they used the device. He was doing what he was supposed to do, and that's drive. What's the attenuation at all? It's very similar to Richard. I know I keep coming back to Richard. Richard is unpublished. That's true. So it's not binding on him, right? That's correct. And it is different factually, and it is different before the Supreme Court case. That is true. I think maybe you should go to higher ground. Maybe to Sprinkle. The policy reasons behind Sprinkle are important. And Sprinkle talks about suppressing the drugs with virtually immunized defendants who commit crimes following police misconduct. And that's true when they shoot at an officer, but that's also true when there is a lane change violation or a speeding. Well, does it matter that the defendant wasn't driving the car? Well, the stop is legal. We don't want to immunize defendants' criminal conduct, but he wasn't the one committing the crime in this instance. His driver was. And in that case, perhaps that makes it even more intimidating. If he's not driving, if someone else is the one committing the illegal conduct, everything that happened after that stop was legal. They stopped the car. One officer went to the driver's window. Another officer went to where the defendant was sitting as a passenger. When they rolled down the window, he smelled marijuana. And at that point in time, they got the defendant out of the car and patted him down, and that's when they discovered the methamphetamine. So that does favor attenuation. Did they write the speeding ticket? I believe they gave her a warning. A warning? I believe that was the testimony. I'm sorry, Your Honor. I don't remember specifically whether it was a warning or a citation. To the extent – suppression is appropriate as a – Let me just ask you a little bit more about Sprinkle, because Sprinkle was post the Utah case, the Sprinkle case. So it really didn't engage with this three-part analysis. So how much weight should we – in every given circumstance, I think, whether it's a change in the law or, in this case, a crime, however minor it might be, we have to engage with that three-part test now, right? And Sprinkle didn't do that. So how much weight should we attach to Sprinkle? The policy behind Sprinkle should still be very strong. It defines what an intervening circumstance is. Well, that gets you to one part of that three-prong test. And as you can tell, I think we're very concerned about that third and also the first one because there really wasn't much in the way of attenuation here, I don't think. So – The Supreme Court in Strife told us that the flagrancy was the big factor. And I know I've said this many times, but we are taking the position that it was not flagrant crime. Well, you have to, I guess, yeah. But you also are taking the position that Strife is good law because it's from the Supreme Court, so we have to follow it, right? The government would have us do nothing less. Of course. But when you also – I believe Strife – I can't recall whether it was Strife or Richard – does talk about the stop itself and the lawfulness of the stop. After the stop, everything was proper. They weren't doing anything that was improper when they approached the car, when they got the defendant out of the car. There's no allegations that any of that post-stop was unconstitutional. And again, after – So what part of the Strife three-part test does that go to? That would go to – It doesn't make it less flagrant, surely, right? The flagrancy is in the constitutional violation to begin with, right? Yes, but if you look at the purpose and conduct of the officers themselves after the stop, they weren't – I mean, I think you can distinguish this from Gaines because they found that – in Gaines, they found the – I believe it was a firearm after the stop itself. But here, the illegal lane – I'm sorry, the speeding happened. They properly conduct themselves during the traffic stop, after the traffic stop. So you think that that somehow helps them with flagrancy of the original constitutional violation? And continuing, for that matter? We would take the position that that is helpful to show that the officers were not acting flagrantly. I see my time is almost up. No, it's not almost up. It is up. Oh, sorry. I'm sorry. It is up. That's okay. Do you have any questions? But I'll let you – you were peppered a bit with questions. You may briefly summarize your argument. In conclusion, the United States believes the attenuation doctrine should apply. We believe that both intervening circumstances and in relation to the purpose and flagrancy, the United States – that the law enforcement was not acting flagrantly. The United States believes there is enough evidence in the record to affirm the district court's decision on other grounds, especially in related to the motion to suppress. However, if this court does find that it should reverse, we would ask the panel remand for future proceedings on the issue of attenuation and exigency, as the district court appeared to close that door on ever having the exigency to place a GPS tracker on a vehicle without a warrant before getting a warrant. And for the other two issues, we'll rely on our brief. Thank you. Thank you. Thank you, Ms. Thomas. Mr. Coleman, you have a little time reserved. Thank you, Governor. Judge Motz, the question on where in the record as far as continuing practice. Yeah. I would refer you to Joint Appendix, page 83. Right. In addition to the Garvin incident, there's questioning about the general practice of Mdent and Officer Johnson in this case. So I'd refer you to that page of the Joint Appendix. Well, I think the government today talked about similar practices. Yes, ma'am. The auto exception does not trump everything. We saw that this term with the court in Collins. That was the car they covered that was searched up in the curtilage of a home. Ray mobility does not justify what they did as an exigency. We saw that in Carpenter. Cell phone location information is about cell phones. They're very mobile. And yet Riley turned around and said with a driver, with a phone, you've got to have a warrant to search it first. So there was no real discussion or consideration of an automobile exception or even any exigency. In fact, the court readily acknowledged that we don't have that case before us. And their statement that, oh, we didn't know anything about the car until that day. They searched the car. They ran the registration. They knew the VIN on the car. They knew who made it. They knew who owned it. They know where the tag came from. He was operating it that day. That was his standing, not just the concession. Just as you had asked, did it matter, was he in the car when they made the stop? What matters is he was in the car when they violated his Fourth Amendment rights and continued to exploit that violation until they stopped the car while he was still in it. Damara Moore's affidavit, which nobody ever challenged, questioned, even when they pulled her back before the grand jury, was that they had joint use, joint possession, joint expectations between each other with that car. Mr. Terry was regularly using it unless she went and saw her folks. They went together on the trip to Columbus. The intention was when they came back, he'd drop her off and continue his use per their arrangement. Rekas and Rusher, the case in this circuit, does not change that because what's different in this case is that there's evidence of them not just being present in the car with a conveyance. Mr. Terry was there with an expectation of possessory use. He had a possessory interest in it with her, with the owner, per their arrangement and agreement. And that was documented when we filed it with the court. He didn't let us put on any other evidence concerning that. The United States never questioned it. It's in the record there. So with the concessions combined with that, again, where Judge Goodwin basically held on the standing issue was that, gosh, if you're not sitting in the driver's seat, you don't have any. And that's not consistent with accepted norms in today's practice. Look at how millennials are sharing phones, sharing cars. Not millennials, everybody. I have a cell phone contract with a carrier. If I have one phone because one's broken, my wife and I may share it. My child and I may share it. Their location information was tracked at the time they had it just like GPS would have been on a car. And yet the Supreme Court has said that information is subject to reasonable expectation of privacy. Again, the agreement, two things distinguish this case from Richard. In Richard, they did not use the constitutional violation to make the stop. They watched it cross the line visually. That's all. Here, and again, that's on the joint appendix on page 207. Judge Goodwin made the finding. They only stopped the car after consulting the GPS to try and verify what they called the pacing. They didn't choose to stop it based on the pacing. We got to the hearing, and it was a good argument to make or fact to try and put in. But in practice, they made sure they had a good basis to back them up to say, I could see that because they were uncertain about how they placed it to begin with. Then they stopped them, and they got lucky when they found something. Can I ask you a question that Judge Diaz raised with your colleague on the other side? Yes, ma'am. So what do we do with Sprinkle? Is it your suggestion that we overrule Sprinkle or say Sprinkle has been done in by subsequent Supreme Court law? I think it's certainly been superseded by the clarification in Streiff. It's not a binding opinion here, and it has some factual— One panel cannot overrule another. But I have read your argument as making an argument that we could decide in your favor consistent with Sprinkle. I think you can. And I'm sorry, I was putting Richard in my head, which is completely different. Sprinkle's ours, yes. Again, I go back to Judge Michael's footnote and his acknowledgement of, well, there's a range of stuff here you can do with that. And that's absolutely consistent with Brown and later with Streiff because you're doing the balancing test. But Judge Diaz is quite correct. The panel in Sprinkle, I sat on Sprinkle and remember it well, did not have the benefit of Streiff. Correct was decided after the fact. So what I'm trying to do is to get your views on the best reading of those two cases together. There's enough in Sprinkle to acknowledge that there's not a categorical attenuation rule. And the court retains the discretion in applying the Brown and Streiff factors in weighing them. And where the flagrancy outweighs, then that's the discretion of the panel to rule that there can still be exclusion. I don't know that I'm giving you a good answer with that. No matter the severity of the criminal violation. I think that plays in, Judge Diaz. But five miles an hour over the speed limit, I don't think rises to the level of anything Judge Michael was willing to consider in Sprinkle. And that's why I don't think they're inconsistent. Where would the severity of the intervening circumstance, where does that play? I'm not sure I really understand your argument. I think that's going to be the challenge because if, under Streiff, the degree of flagrancy is going to govern the analysis, the weighing at the end of the day on a case-by-case basis is going to have to be, did any intervening event, was it severe and serious enough to overcome the constitutional violation? But that, of course, isn't what Streiff said. At least I don't read Streiff as saying that. It talks about flagrancy as a different category, if you will. But when they're judging intervening circumstances, it seemed to me that it was, I don't know, pretty close. Not so far from the asserted intervening circumstances here. Well, then I'll go to policy with what the government tried to present. And it always, you know, the expression about any defendant can avoid future criminal conduct if we recognize a violation here. That came from Bailey in the 11th Circuit. That was first read into Judge Michael's analysis in Sprinkle. Richard just picked it up and kind of rehashed it. But the opposite is just as important and seems to me more so, in that where you have really flagrant and egregious law enforcement conduct. This is the only remedy to affect Fourth Amendment protections. And if we're going to err on, if we allow any intervening event, any little bitty, any of the smallest possible thing, jaywalking, what is that going to do to the confidence in our court system, in our constitutional system, in our law enforcement, if that's all it takes to escape being held accountable and responsible? The exclusionary rule has been around in this country for 104 years. It's applied to the state since 1961. But it's getting narrower and narrower. Exactly. And my hope is that this panel will keep taking the baby steps to help push that back so it becomes something, or it does not become anything more than just a footnote or something we talk about and walk past without it applying. As fast as technology is moving ahead, we've got to start doing more of that. Some of the things they can do now, plugged into the Internet, are terrifying. And there's no real way to avoid being drawn into them. Stingrays are nothing compared to some of the software and algorithms they have. They can find out everything about our lives just because we plugged in a wire. And that's what Judge Roberts was concerned about in Carpenter. It's the same application with GPS here. The officers found a way to get past the obstacle they've had in their investigation, and if they're being result-oriented, and I'm not saying they're evil people. I'm saying they deliberately did this. It was said that if Supreme Court justices can envision it happening to them, it's a Fourth Amendment violation. I thought about arguing that at one point, but I didn't want to overstep. But, yes, it applies to all of us. Five miles over the speed limit applies to a whole lot of people. Yes, sir, it does. And what saddened me with this case, with the sentencing, the officers were fist-pumping going down the hall. They knew, they'd gotten close, and gotten away with it, and that did not deter anything. Regardless of how many reporters recovered the ruling on the suppression motion, no matter what Judge Goodwin said about his concerns and the gravity of their conduct, they still got, they didn't just get the drugs off the street. They didn't just say the case or things that would be priorities to them. They know what they did was wrong, and yet they got away with it. And the ruling in this case does absolutely nothing up to this point to deter it happening again. Do you think it matters that Judge Diaz asked the question that he was not driving? No. You don't? I do not. You don't think your case is strong under that? Because it talks about a new act that's independent of the act that would allow a lawful arrest. Can you arrest someone for speeding when you're the passenger? Oh, no, no. That's a big distinction, isn't it? Yes, sir, it is. And I took your question more about the possessor interest in using a car. Well, okay, let's talk about that a little bit. There's no backing up by the illegal device in my hypothetical. And the speed is 20 miles over the speed limit. So, and the speed limit is 60 miles an hour. So the car's going 80 miles an hour. That you don't think that that makes it that only the officer or only the person that's driving, that counts against, it doesn't count as an independent act against the passenger? I mean, I think that's, I'm not sure you have to go there. And I think that's a fraught argument. I don't think I do in that sense. Yes, but I do think what distinguishes us from any other stop is that he did still retain a possessory interest by the arrangement he had with the owner and driver of the vehicle. In other words, his ability to challenge, on the standing issue, not the attenuation. Yeah, but now we're talking, I was talking about attenuation. Yes, ma'am. And I think my colleague was too. I took it as that. And there are three strife factors that you look to. Attenuation is only one of them. The most important one is flagrancy. Yes. So, my time's up. I appreciate you listening to me at this point. Thank you for the argument. We'll come down and seek counsel. And then we'll, but first we're going to adjourn the court for the day. And then we'll take questions. This honorable court stands adjourned. God save the United States and this honorable court.
judges: Roger L. Gregory, Diana Gribbon Motz, Albert Diaz